## Case No. 10,142.

NEWARK SAVINGS INST. v. PANHORST et al.

[7 Biss. 99; 1 8 Chi. Leg. News, 211.]

Circuit Court, S. D. Illinois. March, 1876.

TOWN SUPERVISORS—REFUSAL TO PLACE JUDG-MENT OF TAX LIST—MEASURE OF DAMAGES.

The highest damages which will be allowed in the United States courts, against the super-visors of a town for a refusal to put a judgment on the tax list, e en though a mandamus shall have issued, will not exceed a counsel fee and costs.

[Cited in Branch v. Davis, 29 Fed. 894.]

At law.

John M. Palmer and John Mayo Palmer, for plaintiff.

Lyman Trumbull, John J. Rinaker, C. A. Walker, and W. R. Welch, for defendants.

DRUMMOND, Circuit Judge. This is an action on the case to recover damages for non-performance of a duty by the defend-ants, as supervisors of the county of Macou-pin. The plaintiff recovered two judgments in this court against the county of Macoupin, amounting, altogether, to over $100,000, and writs of mandamus were issued, requiring the supervisors to levy a tax of one per cent. of the assessed value of the property in the county, to pay the judgments. The writs of mandamus were issued on the 24th of May, and the 28th of August, 1873, respectively. They were served upon the board of supervi-sors of the county, and the defendants all had notice of the fact that writs of mandamus had been issued, independent of the general ob-ligation which the law imposed upon them to discharge the duty. The attention of the de-fendants was, therefore, in these writs, spe-cially called to the duty incumbent upon them, to impose a tax to pay the judgments.

They wilfully disregarded and disobeyed these orders of the court; in other words, vio-lated a solemn obligation. For this disobe-dience to the order of the court, and for the non-performance of the duty required by the law, this action was brought, and the only question is, what is the amount of damages that can be recovered in the case.

It may, perhaps, be said, although it can hardly be considered as proved in the case, but still it has been argued somewhat upon that undisputed fact, that, for this disobedi-ence to the orders of the court, the parties were fined, and the fine was paid. But it was not paid by themselves. They took the money of the county and paid the fine. And these fines were, it is understood, appropri-ated in part to the payment of costs.

A decision of the supreme court of the United States, not yet reported (Dow v. Hum-bert, 91 U. S. 294), has restricted us very

much as to the quantum of damages which should be allowed in a case like this. That court has decided, in effect, that the measure of damages is not the amount of the claim. At the same time it is stated that if the plaintiff has sustained any special damages, they can be recovered.

Looking at the whole case, without going into the reasons which have influenced the conclusion, and regarding the decision above referred to as allowing nothing more than quasi nominal damages, we have determined that we will give the plaintiff some compen-sation for the trouble to which it has been put in consequence of the non-performance of a duty by the defendants, in the employ-ment of counsel, and for the labor and ex-pense, without defining it in any precise form or language.

In the case of Dow v. Humbert, supra, a demand was made on the officers of the town to place upon the tax-list the judgments then in question, which was necessary under the laws of Wisconsin, before the judgments could be paid. That was not done. The su-preme court thereupon assumed that it might have been in consequence of ignorance, inad-vertence, or mistake on the part of the offi-cers, although it does not exactly appear how, or under what circumstances that inference was drawn.

There certainly can be no such assump-tion here. In that case there were allowed only nominal damages. Here the case is in-finitely more aggravated. In fact it is as much so as it possibly can be. It is a case where the defendants have set at defiance the orders of the court—orders they were bound to obey—a case in which they were as guilty of violation of an imperative duty as men well can be. This court is a part of the institutions of their country, just as much as the circuit court of Macoupin county. They are just as much bound to obey its mandates, as though it was a court of their own coun-ty. They have chosen deliberately to disre-gard them.

It is said, indeed, that we have punished them, and can punish them again. That is true, but this is an action brought for the violation of a public duty, which has resulted, it is claimed, in pecuniary loss to the plaintiff. So that it is a case where we think we may go further than the supreme court said they could go in the Wisconsin case. But at the same time we feel restricted, as I have said, by the rulings of the supreme court, and, while we give some damages, after all they will amount to not much more than nomi-nal damages.

We will allow five hundred dollars to the plaintiff, and eighty-five dollars for the pay-ment of the money for notices. The judg-ment of the court will be therefore for the plaintiff for the amount of $585 and costs. The parties who were not present at the meet-ing of the board of supervisors at which the

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

act of disobedience occurred, as well as those who voted for the imposition of the tax, as directed by the writs, are not, of course, included in this judgment.

I ought, perhaps, to add, that our view was, if we were left free by the decision of the supreme court, that the plaintiff would at least be entitled to the interest upon the money which would have been collected, if the defendants had performed their duty.

The presumption is, the plaintiff could have had the use of the money, and, in one sense, might have compounded the interest. But we think we are not at liberty, under the decisions of the supreme court, to allow it. That court seems to think that as the interest is still due and payable, and may be included with the principal, that is all which can be allowed.

We have also thought that there has not been, within the meaning of the supreme court, any substantial "impairment" of the responsibility of the county. It is true, that the assessed value of the property of Macoupin county was much less in 1875 than it was in 1873; but still it appears that the property is sufficient to enable the county to pay. At any rate, the fund out of which these judgments are to be made is sufficiently large to enable the plaintiff to avail itself of the laws to recover the amount.

It is also true, that under the decisions of the supreme court, these judgments against municipal corporations, where people do not choose to pay them. are not very potential. It has held that where the laws of a state declare that there can be no execution against the property of a municipal corporation the federal courts are without power to collect judgments by the imposition of taxes, although that may be the only resource. Rees v. Watertown, 19 Wall. [86 U. S.] 107.

And now it has been decided, substantially, that the officers of such corporations are not liable for more than nominal damages, if they refuse to perform the duty which the law imposes on them. The result is, judgments can be obtained in the courts against these municipalities, upon the bonds or coupons they have issued, and their obligations construed with the greatest rigor, but after judgments, and when it is attempted to make their property available to satisfy them, then arises the real difficulty of the case, in the effort to overcome which, the old legal maxim, that there is no wrong without a remedy, seems sometimes to be reversed.