## COMMERCIAL TRUST CO. OF HAGERSTOWN v. LAURENS COUNTY.

## SAME v. SOUTHERN EXCHANGE BANK.

(District Court, S. D. Georgia, W. D. July 23, 1920.)

Nos. 57, 59.

1. **Subrogation ⊙═>23(2)—Persons furnishing money by agreement with county to take up warrants subrogated to rights of payees.**

   Where a county, without legal authority executed and sold its negotiable notes under an arrangement with a bank, embodied in an agreement, signed by the bank, which accompanied the notes, that the bank should receive the proceeds and use the same only in taking up legal warrants of the county, which it would hold uncanceled for the benefit of the holders of the notes, until the notes were paid, warrants so taken up *held* by subrogation to become the property of the holders of the notes.

2. **Equity ⊙═>39(1)—Jurisdiction for discovery retained to grant complete relief.**

   Where county warrants, which were by agreement with the county to be taken up by a bank and held uncanceled for the benefit of complainant which furnished the money, until it was repaid, were, in violation of the agreement, surrendered by the bank to the county, which refused to permit their examination to ascertain whether they were in such form as to vest the legal title in complainant, or whether they had been canceled, a court of equity, whose aid was properly invoked for discovery, *held* to have jurisdiction to grant complete relief.

3. **Courts ⊙═>312(2)—Suit held directly on warrants, and not brought by assignee of notes.**

   A federal court *held* to have jurisdiction of a suit by the holder of notes of a county to enforce liability of the county on warrants taken up by a bank with the proceeds of the notes, and which were to be held uncanceled to secure their payment, although the payee of the notes could not have maintained a suit in that court; the suit being based on the warrants and not on the notes.

4. **Counties ⊙═>170(1)—Warrants not required to be presented for audit before suit thereon.**

   Civ. Code Ga. 1910, § 411, providing that claims against a county must be presented for audit within 12 months, does not require warrants issued on audited claims to be again presented before suit thereon.

5. **Banks and banking ⊙═>67—Equity has jurisdiction of suit to charge consolidated bank with liability of constituent bank.**

   Where a bank which became liable for breach of contract was consolidated with another bank, which assumed its liabilities, equity has jurisdiction of a suit to charge the latter with such liability.

6. **Banks and banking ⊙═>90—Liability for breach of contract to hold securities.**

   A bank *held* subject to action for breach of a contract to hold uncanceled certain county warrants for complainant's security, regardless of the question whether the county could be held liable on the warrants, although they had been surrendered, which went only to the damages recoverable from the bank.

⊙═>For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

267 F.—57

In Equity. Suits by the Commercial Trust Company of Hagerstown against Laurens County, and against the Southern Exchange Bank. On motion in each case to dismiss bill. Motion denied.

See, also, 267 Fed. 901.

Jones, Park & Johnston, of Macon, Ga., for plaintiff.

Hall, Grice & Bloch, of Macon, Ga., and M. H. Blackshear and Burch & Daley, all' of Dublin, Ga., for defendants.

SIBLEY, District Judge. The plaintiff, as a corporation of Maryland brings this bill against Laurens county, Ga., setting up that on January 10, 1918, the commissioners of roads and revenues of Laurens county passed a resolution authorizing a loan of $75,000 to supply a casual deficiency in revenue, but at the time no such deficiency really existed and the real purpose was to pay current expenses of the county, in anticipation of the taxes to be collected the current year; that an arrangement was made with Frank Scarboro Company, as a broker, to sell the notes to be given, and, knowing that the notes were really not binding on the county, the commissioners arranged with Scarboro Company and the Commercial Bank of Dublin that the latter should act as a special depository for the proceeds of the notes, and should use them only in the payment of county warrants representing valid claims against the county, which were to be held by the bank uncanceled as security for the notes until the latter should be paid and satisfied. The bank executed, under its corporate seal, a paper as follows:

"The county of Laurens, Georgia, having duly executed its notes aggregating in the sum of seventy-five thousand dollars, under and by virtue of a resolution adopted by the board of commissioners of roads and revenues of said county at regular meeting on January 10, 1918, said notes being executed by the treasurer and commissioners of Laurens county, Georgia, and bearing date of January 10, 1918, and payable to the order of Frank Scarboro Company on December 31, 1918, we hereby agree to honor and charge only warrants of the county of Laurens, Georgia, as drawn by the proper officer of said county, against the proceeds of these notes, and hold all of said warrants, uncanceled, subject to the order of Frank Scarboro Company, or the holder or holders of said notes, until the notes as above mentioned and referred to are fully paid and satisfied, after which, on presentation to us of the notes bearing evidence of due and proper cancellation, we will then cancel and turn over to the proper officer all of said warrants.
"This 10th day of January, 1918."

The plaintiff purchased of Scarboro Company $30,000 of the notes, which were accompanied with copies of the above agreement, relying upon the faith thereof. The proceeds of the notes were deposited in the bank and were used as agreed in taking up warrants of the county. On August 14, 1918, said bank was consolidated with the Southern Exchange Bank, which took over the assets and assumed the liabilities of the Commercial Bank, receiving the warrants and the balance of the deposits. On December 30, 1918, the Exchange Bank delivered the uncanceled warrants to the county commissioners, and on December 31st plaintiff's notes were dishonored. The county officers are in possession of the warrants, and refuse to permit plaintiff to examine them, or to give a list of them. The prayers are for discovery with reference to the warrants, and for subrogation to the rights of the

former holders thereof, and for a decree for payment by the county of the amount due on the warrants. A separate bill in equity is filed by the plaintiff against Southern Exchange Bank, setting up facts substantially as above, alleging a breach of the duty to hold the warrants for the security of the plaintiff, and praying for an account for the value of said warrants wrongfully delivered to the commissioners of Laurens county, and for judgment and general relief. Motions to dismiss each bill are for decision.

[1] 1. The remedy at law by action for money had and received to charge the county for money obtained from an illegal loan, to the extent that it is actually applied to its lawful use, has been considered in another case between the parties. 267 Fed. 901. The equitable remedy by subrogation to the rights of those whose claims against the county were paid is here sought. The doctrine of subrogation is fully considered in Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204, and applied to facts quite similar to those involved here in Butts County v. Jackson Bank, 129 Ga. 801, 60 S. E. 149, 15 L. R. A. (N. S.) 567, 121 Am. St. Rep. 244. As ruled in the former case, where the payment was made at the request of the debtor on the express understanding, or under circumstances from which such an understanding can be implied, that the person paying was to have the benefit of the claim paid, equity, though it were actually canceled, will set aside the cancellation and subrogate the payor thereto. Here there was an express understanding, to which all concerned were privy, that the warrants to be paid off should be preserved for the benefit of whoever should furnish the money. They were taken up by a third person, and not by the county, and were actually preserved uncanceled. That the warrants became, in equity, the property of the plaintiff to the extent that his money was used by the bank to pay for them seems unquestionable. Indeed, since the loan was, under the allegations, an unlawful one for the county to make, the money did not become the county's money, and the bank, in disbursing it, was more apparently the agent of the plaintiff than of the county.

[2] County warrants, by Code, § 583, "are negotiable by delivery or indorsement and the indorser liable according to the terms of his indorsement, as in commercial paper"; the county's right of set-off being reserved. In the absence of contrary allegations, these warrants may be assumed payable to bearer, and the serious question is whether the title to them was not fixed in the plaintiff, and whether his suit should not be at law upon them. In view of the discovery sought about them, jurisdiction as to which, in connection with other relief, will not be held to have ceased by reason of the discovery provided in equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), and the likelihood being that at last the legal title may prove not to be in plaintiff, or that cancellations of the warrants may have to be set aside, the case will not be transferred to the law side of the court.

[3] 2. The contention that plaintiff is an assignee of Frank Scarboro Company, who could not have sued in this court, and that in consequence jurisdiction does not appear, is overruled. The plaintiff is suing only in respect of the county warrants, which were never in the

name of, nor owned by, Scarboro Company. Its claim is a direct one against the county. The undertaking of the bank as to the payment of the money was not addressed to Scarboro Company, more than to any other holder of the notes, and was never transferred to plaintiff, nor is it the basis of the suit. It is only evidence in the case to define the relation between plaintiff and the bank, and to show the intent with which the warrants were taken up. It is likewise immaterial that this undertaking was never entered on the minutes of the county commissioners as a contract of the county, and that it does not purport to bind the county. Like immateriality exists as to the failure to allege that the arrangement with Scarboro Company to sell the notes was entered on the minutes, so as to bind the county. Such failure might · affect the right of the Scarboro Company to collect compensation, but touches no right of plaintiff. The bill seeks substantially to enforce liabilities against the county, represented by its warrants, which the county owed independently of any dealings with or through Scarboro Company, and the equity of the plaintiff, so far from being destroyed by, arises out of, the invalidity of the proceedings with and through the Scarboro Company.

[4] 3. Though Code, § 411, requires all claims against the county to be presented for audit within 12 months from the time they accrue or are payable, and though this suit was served January 1, 1920, more than 12 months after the warrants were taken up by the bank and turned over to the county, and no other presentation is claimed, yet it is not barred, because its substance is the enforcement of the warrants. The equity of subrogation is but the means of enforcement. Under Code, § 410, when claims are audited and warrants issued for them, they are in the nature of judgments, establishing their validity. Smith v. Fuller, Ordinary, 135 Ga. 271, 69 S. E. 177, Ann. Cas. 1912A, 70. These warrants are presented to the treasurer, and by Code, § 579 and following, if funds for payment are not available, they may be marked "Presented," and thereafter are payable as funds come in, in the order of their original presentation. There is no occasion to reaudit the warrants, and they remain valid and enforceable, irrespective of the limitation provided in section 411, until paid or barred by some other provision of law. This was· recognized in Butts County v. Wright, 136 Ga. 697, 71 S. E. 1046(5). The motion to dismiss this bill is accordingly ·overruled.

[5] 4. As regards the other bill, the undertaking of the bank which accompanied these notes was made for the purpose of inducing investors to buy them, and as offering them additional security for their money. It is in the nature of a general offer, which became a binding contract on acceptance ·by a purchaser of the notes; the consideration being, not only the furnishing of the money by the investor, but the deposit of it· in the bank. The receiving of such deposits, payable only for specific purposes, is not unusual, and is within the powers of a bank. It would seem that for a breach of the agreement in this case, causing damage to the plaintiff, an action at law would lie upon the contract. A resort to equity, however, is justified, if not required, by ·the fact that the liability has been assumed by the Southern ·Exchange

Bank, between whom and the plaintiff no direct contract exists. To enforce against this bank its assumption of the liabilities of the original contractor, a resort to equity is proper. Sheppard v. Bridges, 137 Ga. 615, 74 S. E. 245; Willard v. Wood, 135 U. S. 309, 10 Sup. Ct. 831, 34 L. Ed. 210.

[6] 5. The contention is made that the right of action against the bank is secondary to that against the county, and that it does not appear that the county is insolvent, or that the warrants cannot be enforced against it. While it is true that the amount of damage done the plaintiff depends upon its ability to enforce the warrants against the county notwithstanding the acts of the bank, that is a question which arises upon the trial. The liability of the bank is not secondary to that of the county, but arises upon a different and independent basis. The difficulty of establishing the damage would not hinder a suit upon the liability of the bank. Inasmuch, however, as both cases are pending in this court at the same time and relate to the same transaction, and the remedy against the bank must necessarily be affected by the result of the suit against the county, it will be ordered, unless good cause can be shown to the contrary, that the two suits be consolidated and tried together, that full justice may be done in the premises.