## COMMERCIAL TRUST CO. OF HAGERSTOWN v. BURCH et al.

(District Court, S. D. Georgia, W. D. July 23, 1920.)

No. 174.

1. **Officers** ⬅⚬114—**Public officers personally liable only for corrupt or malicious acts.**

While public officers are agents, for reasons of public policy their individual liability is governed by rules different from those applying to other agents, and they may not be held personally on contracts made in behalf of the public, in which they are required to exercise judgment and discretion, unless they act corruptly or maliciously.

2. **Counties** ⬅⚬59—**Commissioners not personally liable because of recitals in invalid notes of county.**

County commissioners *held* not personally liable for deceit to a purchaser of notes caused by them to be executed by the county, because of general recitals in the notes that all things had been done to render them valid obligations of the county, where such recitals also contained statements of fact and references to provisions of the law which showed that, under the law as construed by the Supreme Court of the state, the notes were unauthorized and invalid.

---

⬅⚬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Attorney and client 114—Attorney liable for deceit by knowingly giving false opinion.**

An attorney, who was not an officer of the county, may be held liable for deceit to a purchaser of notes of the county for falsely certifying that in his opinion the notes were valid obligations of the county, when he knew they were not.

4. **Counties 88—County officers personally liable for property taken without lawful authority.**

Where a county executed notes, which were invalid and which it refused to pay, and by agreement the proceeds were paid to a bank, which used the same in part in taking up county warrants which it was to hold uncanceled until the notes were paid, such proceeds and the warrants so taken up did not become the property of the county, but was that of the note holders, and the taking possession of them for the county by its officers was without authority of law, and rendered such officers personally liable therefor.

5. **Counties 88—County officers liable only to county for illegal payment of money.**

County officers *held* not liable to a holder of notes of the county for negligently using money which should have been applied to payment of plaintiff's notes in paying other notes, which were not valid obligations of the county; such liability, if any, being to the county.

6. **Conspiracy 18—Petition in action for conspiracy to defraud sufficient.**

The petition in an action against county officers, alleging a conspiracy by defendants to defraud by the issuance and sale to plaintiff of invalid notes of the county *held* to state a cause of action.

7. **Fraud 47—Allegation of damage sufficient.**

In an action for damages against county officers for fraudulently causing the issuance and sale of invalid notes of the county, it is not necessary that the petition should allege that there can be no recovery from the county, where it sufficiently appears that even in such case plaintiff will sustain damage.

8. **Abatement and revival 5—Action against county to enforce contract not inconsistent with one against officers for fraud inducing it.**

A suit against a county to enforce its liability on account of notes executed by it *held* not a bar to a suit against its officers for fraudulently causing the execution of such notes.

At Law. Action by the Commercial Trust Company of Hagerstown against H. C. Burch and others. On plea in bar and demurrers. Plea overruled, and demurrers sustained in part.

Jones, Park & Johnston, of Macon, Ga., for plaintiff.

Hall, Grice & Bloch, of Macon, Ga., M. H. Blackshear and Burch & Daley, all of Dublin, Ga., for defendants.

SIBLEY, District Judge. In this suit at law in six counts the plaintiff seeks to hold personally liable the county commissioners, clerk, treasurer, and attorney of Laurens county because of their connections with the issuance of certain repudiated notes of the county given for borrowed money. Each count is demurred to. The main facts alleged in each are these:

On January 10, 1918, the county commissioners passed a resolution declaring that there was "a casual and temporary deficiency in the public funds in the treasury of the county of Laurens, and a casual and temporary need of money to meet the current expenses of the

---

county government" and authorizing a loan of $75,000. Notes were executed in the name of the county by the treasurer and county commissioners, attested by the clerk, referring to the resolution as authority, and accompanied by a certified copy of it, and by a statement which referred to article 7, § 7, of the Georgia Constitution as the authority of law for the loan, and showed the assessed taxable property of the county to be $9,380,654. The notes also contained general recitals to the effect that every required condition precedent had been performed, and that the note was within every debt limit prescribed by law. The defendant Blackshear, signing as attorney for the county, attached a certificate that "in his opinion the note is a binding obligation of the county." The Commercial Bank of Dublin offered, in a writing accompanying the notes, to hold their proceeds as a special fund to be disbursed only in taking up valid county warrants, which were to be surrendered to the county only after the notes were paid. These various papers are all exhibited in the petition, and are more fully set out in an accompanying opinion upon plaintiff's suit on the notes, which at maturity were refused payment. 267 Fed. 901.

[1] 1. While public officers are agents, for reasons of public policy their individual liability is governed by rules differing from those applying to other agents. They may not be held personally on contracts made in behalf of the public (Georgia Code, § 3612, Tucker v. Shorter, 17 Ga. 620), though executed in such form that the rule of descriptio personæ would render an ordinary agent suable (Ghent v. Adams, 2 Ga. 214); and if they act without or in excess of authority, personal liability does not follow (Huthsing v. Bousquet [C. C.] 7 Fed. 833; Huthsing v. Bosquet [C. C.] 17 Fed. 54; N. Y. & Charleston S. S. Co. v. Harbison [C. C.] 16 Fed. 688), for their authority is fixed by laws which those who deal with them are as much bound to know as are the officers themselves. Otherwise, not only would it be difficult to get responsible men to fill public office, but there would be constant temptation to yield officially to unlawful demands, lest private liability be asserted and enforced. But, although officers, they may not be rascals, and liability may arise for tortious conduct. In matters of ministerial duty they may even be liable for nonfeasance as well as misfeasance, for mistakes and neglects (11 Cyc. 410; Amy v. Supervisors, 11 Wall. 136, 20 L. Ed. 101); but in matters of judgment and discretion they are liable only if they act willfully, corruptly, or maliciously (11 Cyc. 411). In Georgia Code, § 901, a personal liability as to municipal officers is stated for "official acts * * * if done oppressively, maliciously, corruptly, or without authority of law"; the language being taken from the case of Pruden v. Love, 67 Ga. 190. The concluding expression, "without authority of law," does not refer to the making of unauthorized contracts or overturn the rules above announced, but refers to excesses of jurisdiction and to acts of unwarranted trespass, as will appear from the facts in the Pruden Case, where a house had been wrongfully destroyed. For willful fraud, therefore, officers may be personally liable. 20 Cyc. 86. These rules hold for county commissioners. 11 Cyc. 411, 412.

[2] 2. The first count is for deceit in the recital of the resolution that there was a casual deficiency in funds to meet current expenses. The negativing allegations in paragraphs 8 and 12 are that there was in fact "no casual deficiency in revenue," as was well known to the defendants, and that in consequence the notes were not issued in conformity to the Constitution. As pointed out in the opinion in the suit upon the notes (267 Fed. 897), there is a vast and vital difference between a "deficiency of funds to meet current expenses" and a "casual deficiency in the revenue." The former is regarded by the Constitution as the normal and safe condition in which to keep the treasury during the fiscal year, and borrowing money to obviate it is forbidden. The latter is the unexpected failure of the revenue laid for the fiscal year to cover its expenses, and may be remedied by a limited temporary loan to balance the budget. Had the commissioners, their clerk, and the treasurer falsely and fraudulently asserted the latter, there would have been such a false statement of material fact as would support an action for deceit. But in that case there would also have been an estoppel on the county that would have prevented damage to the plaintiff, and for their misconduct the officers would have been answerable only to the county, if any damage accrued. The assertion of a deficiency in funds to meet current expenses, whether true or false, is of an immaterial matter, for such deficiency would give no validity to the loan. The very section of the Constitution which forbids the loan was referred to in the accompanying papers as the law under which it was made. The general recitals in the notes of a compliance with the Constitution, in view of the explicit facts disclosed as to what had really been done and its futility, amount to no more than an opinion of law that the Constitution did not mean what the Supreme Court of Georgia had always said it did mean. The plaintiff was equally bound with the defendants to know the law, and know it correctly, and cannot complain of incorrect statements about it. 20 Cyc. 19.

[3] The case of the attorney is somewhat different. He formally certified to an opinion that the notes were valid, when the petition alleges he knew they were not. He was not a county officer, and had no official duty in the premises. The validity of a public bond, like that of a title to land, may be ascertained with reasonable certainty by a skillful person, and a representation about it may be more than the mere expression of an opinion. See Gordon v. Butler, 105 U. S. 558, 26 L. Ed. 1166. That it purports to be only an opinion will not always save it from the penalty of deceit, if made the vehicle of successful fraud. 11 Cyc. 18; Sniveley v. Meixsell, 97 Ill. App. 365; Scott v. Burnight, 131 Iowa, 507, 107 N. W. 422. Knowledge of such matters is supposed to belong peculiarly to lawyers, and their opinion is commonly taken and acted on. This attorney was not the attorney of plaintiff, and owed it no duty of skill and diligence, and could not be held liable for want of either, nor for the grossest ignorance of fact or law regarding these notes. But if, posing as a lawyer, for the purpose of inducing investment in these notes, he deliberately and formally, though gratuitously, certified to an opinion that they were valid, when he knew they

were not, there is involved more than the mere expression of an opinion, for the opinion of an expert on such a subject has the value of a fact. It disarms suspicion and stifles inquiry. If it were falsely stated, with the purpose to deceive, that a reputable lawyer had said his opinion was that the notes were valid, it would unquestionably be a fraud. Why the less one when the lawyer himself, for the same purpose, says he has that opinion, when he has not? He misrepresents an important fact, though it be of an impalpable nature. This was not a casual but a formal opinion, carrying an implication of investigation, and that there was at least nothing known to the contrary of its correctness. However improbable, the allegations must be taken as true on demurrer. The count will be stricken as to all the defendants save the attorney. Standing alone against him, his demurrer for misjoinder is good, and for this cause it will also be stricken as to him.

3. The second count sets up that before the notes held by plaintiff were issued the entire $75,000 authorized by the resolution had been issued and sold to others, and these were paid, and those held by plaintiff not paid, and that the statement in the notes that they were issued by authority of that resolution was false. We have seen, however, that the resolution on its face was no valid authority for borrowing any money. It would have helped the validity of plaintiff's notes not at all if no others had been issued. No reason, indeed, appears the county would not be estopped to deny that the plaintiff's notes were, as they stated, issued under the resolution. The count is stricken.

[4] 4. The third count sets up the deposit of the proceeds of the notes held by plaintiff, together with the proceeds of other notes, under the agreement with the bank, and the investment of part of the proceeds in county warrants as provided in the agreement, and finally the taking possession of the warrants and the balance of the cash by the county commissioners, through their clerk, without paying the notes of plaintiff, and with knowledge of all the facts. The notes were on their face invalid, and imposed no obligation on the county. In consequence the money of plaintiff paid into bank was not the money of the county. The warrants that were taken up with it and the balance of the money were in the bank, where the owners had authorized them to be. No one had the right to move them, unless these notes should be paid. The defendants may have taken them in right of the county and on an erroneous understanding of fact or law. But the fact remains that by their own contention in refusing to pay these notes the county cannot own this money or the warrants paid with it. The act of taking possession of them is an act of aggression against the property of plaintiff, which in the language of Georgia Code, § 901, is "without authority of law." They are individually liable therefor. Of course, there may be explanations and defenses, and all the defendants may not have joined in the act. Niceties of title and the exact measure of damages are not now considered. It is simply ruled that plaintiff by its allegations had an interest in the property in the hands of the bank, and defendants had none, and the latter are liable to the former for such damages as their interference

may have actually caused. There seems a strong tendency to visit officers with but slight damages, if they acted without bad motive, though unlawfully. Dow v. Humbert, 91 U. S. 294, 23 L. Ed. 368; Newark Savings Inst. v. Panhorst, 18 Fed. Cas. 36, No. 10,142.

[5] 5. The fourth count sets up that under the resolution of January 10, 1918, the defendants sent out first three notes, for $25,000 each, which were not sold, and then substituted them by a series of smaller notes, amounting to $75,000, some of which plaintiff bought, the proceeds going into the bank as above set forth, and that the defendants negligently failed to take up the three $25,000 notes, but paid the same at maturity, instead of paying the substituted series, and then got the warrants and money from the bank, leaving plaintiff's notes unpaid. The count seeks recovery for the negligence. If the defendants have paid out the county's money for notes which it did not owe, as alleged, they may be liable to the county, but not to the plaintiff. Such act did not affect the county's liability to plaintiff, if any existed, and the county is not insolvent. So the mere negligent taking of the money and warrants from the bank, if followed by no refusal to return them, or other conversion, is not actionable against these officers, for it is no more than an error in a matter not ministerial. But the taking them with knowledge of plaintiff's rights and in disregard of them would be a conversion of them, for which defendants would be liable, as ruled in the preceding paragraph, as would be a willful withholding of them after demand for their return. This count is stricken.

6. The fifth count is similar to the third, except that it is alleged that the whole fund in bank arose from the proceeds of notes of plaintiff. What was said of the third count applies here.

[6] 7. The sixth count alleges fully a conspiracy of all the defendants to obtain a sum of money for the county by the means hereinbefore discussed. The allegations fairly bear the interpretation that the resolution passed was intended to create the impression that there was a casual deficiency in revenue rather than a mere deficiency in cash, that the double issue of notes, the deposit of the funds in the bank, the getting possession of the funds and warrants from the bank, and the subsequent repudiation of the notes of plaintiff were all parts of a successful conspiracy to deceive and defraud. Without going into further details, it is sufficient to say that, if such were the truth, there can be no doubt of the personal liability of these officers. The count is sustained.

[7] 8. Demurrers based on a want of a flat allegation that plaintiff has no remedy against the county in an action for money had and received, or otherwise, are overruled. Frauds and trespasses may give rise to a cause of action so soon as committed, though the amount of ultimate damage may be uncertain. This has been ruled of a fraud resulting in a loan on inadequate security (Briggs v. Brushaber, 43 Mich. 330, 5 N. W. 383, 38 Am. Rep. 187), and an investment in bad bonds (Currier v. Poor, 155 N. Y. 344, 49 N. E. 937; 20 Cyc. 90). It must, of course, appear that some damage has been sustained, for both fraud and damage are required to make a cause of action. Here the al-

legation is explicit that the notes are invalid, and that the money and warrants have been taken, and the county's liability denied, by these very defendants. An action for money had and received, particularly specified in the demurrers, could be good, not for what plaintiff parted with, but only for what may be shown to have been actually applied to the county's lawful uses. A loss of much of the interest promised in the notes is inevitable, and much of the principal likely. Litigation is itself a damage. The damage provable will probably not be all that is claimed in the counts, and the pleadings might have more definitely averred the damages suffered; but it cannot be said that they fail to show any damage resulting from the fraud.

[8] 9. A plea in bar is made, based on the pendency of the suits against the county and bank, which are dealt with in other opinions (267 Fed. 897, 901), which are said to be antagonistic to this suit. There is no antagonism, though the result of those against the county may greatly affect the damages recoverable in this. They are rather supplementary than antagonistic. In none of the suits does the plaintiff repudiate or seek to rescind the transaction. In all it seeks to follow the situation to its lawful results. We need not discuss the consistency of the suit against the county on the notes with that for money had and received, or to be subrogated to the warrants, for the county makes no such point and is no party here. In all of them the plaintiff is seeking a remedy on some part or in some view of the transactions which the defendants are said to have induced. The enforcement, so far as it may be enforced, of a contract, is not inconsistent with a suit for the fraud which induced it. 9 R. C. L. p. 959; Union Life Ins. Co. v. Schidler, 130 Ind. 214, 29 N. E. 1071, 15 L. R. A. 89; Bowen v. Mandeville, 95 N. Y. 237; Sweet v. Montpelier, 69 Kan. 641, 77 Pac. 538; Dilley v. Simmons, 108 Ark. 342, 158 S. W. 144.

"A plaintiff may pursue any number of consistent concurrent remedies against different persons until he obtains a satisfaction from some of them." Georgia Code, § 5522.

It is recognized, of course, that there can be but one satisfaction. The plea is stricken.