No. 31,679

The State Bank of Kingman, *Appellee*, v. The Estate of Jesse T. Braly, Deceased, Jessie L. Braly, Administratrix, *Appellant*.

(33 P. 2d 141.)

Opinion filed June 9, 1934.

*Clark A. Wallace* and *Paul R. Wunsch,* both of Kingman, for the appellant.

*S. S. Alexander,* of Kingman, for the appellee.

The opinion of the court was delivered by

Burch, J.: The question in this case is one relating to election of remedy.

Jesse T. Braly was director, secretary and active manager of the Farmers' Grain and Mercantile Company of Kingman. Braly, using the name of the company as drawer, drew two drafts on a grain company in Wichita, each for $600, in favor of the State Bank of Kingman. To each draft was attached a bill of lading for a carload of grain. The bank gave the Kingman company credit on its checking account for the drafts. The company exhausted the credit and overdrew its account. The bills of lading were fictitious. The drawee of the drafts refused to honor them, and they were returned to the bank. The company was adjudged bankrupt in an involuntary proceeding. The bank filed a claim in the bankruptcy court for the amount of the drafts. The claim rested on the fact

that, induced by Braly's deceit and fraud, the bank gave the company credit for money which was used for the company's benefit and was not repaid.

Braly died, and his wife, Jessie L. Braly, was appointed administratrix of his estate. Subsequent to the filing of the claim in bankruptcy court, the bank filed a claim in the probate court against Braly's estate for the amount of the drafts. The claim rested on the fact that by his deceit and fraud Braly induced the bank to give the company credit for money which was used for the company's benefit and was not repaid. The claim was allowed by the probate court and, on appeal to the district court by the administratrix, was again allowed. In her appeal to this court the administratrix contends that by filing the claim in the bankruptcy court the bank elected to treat the transaction whereby it lost its money as one involving contract only, and the election absolved the estate from liability for Braly's tort.

The subject of election of remedy has received consideration by this court, and it is established that in seeking redress for violation of legal duty a plaintiff may not occupy inconsistent positions. The case of *Ireland v. Waymire,* 107 Kan. 384, 191 Pac. 304, presents the subject in simple form. Waymire had an automobile in his possession. While he was in Arizona, Juanita Hill sued him for the value of the automobile, alleging Waymire had procured it from her, had refused to return it, and had converted it to his own use. The theory of the action that Waymire should pay Hill the value of the automobile necessitated the conclusion that Hill had no further interest in the chattel, and it had become property of Waymire. In an action subsequently commenced in Kansas, Ireland sued Waymire and attached the automobile as a chattel owned by Waymire. Hill intervened and claimed she was and had been owner of the automobile. It was held that, because in Arizona Hill had affirmed ownership in Waymire, she could not subsequently recover on the contradictory affirmation that she and not Waymire was owner. It is manifest the choice was not primarily between remedies, but was between inconsistent rights—right of owner of a chattel to possession, and right of one who had parted with ownership to value of the chattel. The remedy must be appropriate to vindication of the chosen right.

In recent times the doctrine of election of remedies has been scrutinized by legal analysts of high repute who have criticized it

severely. Some courts have mitigated to some extent the harshness of the doctrine. The decisions disclose much confusion in application of the doctrine. The authorities agree that whether the doctrine of election of remedy applies depends on the facts of the particular case, and, without qualifying the decision in the Ireland-Waymire case, it may be shown that case does not govern the present controversy.

The claim filed by the bank in probate court alleged Braly colluded and conspired with his company to get the money by means of the worthless drafts.

There was in fact no collusion, and there was in fact no participation by the principal in its agent's misconduct. The drafts were deposited on February 26, and Braly committed suicide on February 27. The principal in fact had no knowledge of anything done by the agent, and, so far as the company is concerned, all that in fact happened was, its bank balance was increased, out of which some of its obligations were discharged.

The first claim filed was filed against the estate of the bankrupt company, and if any election occurred it was made by that act. That claim reads:

"The bankrupt carried its banking account with the above bank, and an overdraft was created on February 27, 1932, amounting to $1,193.15, no part of which has ever been paid. A large amount of such overdraft resulted from certain fictitious bills of lading, with draft attached, on proposed shipments of wheat. Claim with interest at 6 per cent to date of bankruptcy, September 20, 1932, amounts to $1,232.15."

The operative facts on which the claim in bankruptcy court was founded are precisely the same as those on which the claim in probate court was founded. The bankrupt company had the benefit of money obtained from the bank through Braly's deceit and fraud, which the company did not repay. Braly, through his deceit and fraud, created the condition whereby the bank's resources were depleted and the company's resources were augmented. Why did not the bank have two consistent and concurrent remedies to obtain reparation, one against the company which profited, and one against the wrongdoer who caused the bank's loss?

Solution of the problem does not depend on choice between affirming and denying ownership of a chattel, as in the Ireland-Waymire case, or of wheat, as in the case of *Morse v. Grain and Ice Co.*, 116 Kan. 697, 29 Pac. 366. In the latter case grain was stored in the

elevator of a grain company whose business was conducted by its officers and directors as if the company were solvent. In fact, it was insolvent. The company sold the wheat and did not account. The plaintiff elected to treat the storage transaction as a sale of the wheat to the company, and he recovered judgment against the company accordingly. He then sued the officers and directors of the company as tortfeasors for conversion of the wheat. Since plaintiff elected to affirm a perfectly good sale of his wheat, the court applied the orthodox doctrine that plaintiff could not both affirm and deny sale.

In the case just referred to the specific question whether one person may be sued for damages for deceit and fraud whereby another is induced to make a contract with a third person who does not perform was not considered or decided. The case of *The Union Central Life Insurance Company v. Schidler,* 130 Ind. 214, was such a case. A father conveyed land to his son for the purpose of enabling the son to procure a loan secured by mortgage, through false and fraudulent representations regarding location, quality, condition and value of the land. A loan was procured from the insurance company for $1,750. The mortgagor did not pay, the mortgage was foreclosed, and the land was sold for $500, its full value. Execution against the son for the remainder of the judgment was returned unsatisfied. A judgment rendered against the father for damages for tort committed by inducing the contract was affirmed. While the father received some of the money, the decision was not predicated on that fact. The syllabus reads:

"Where two persons have conspired to enable one of them to procure a loan upon a worthless security, the recovery of a judgment on contract against the one so procuring the loan is no bar to an action against the other for damages sustained by reason of his participation in the fraud."

The opinion cites early authorities in support of the judgment. Among them is the case of *Whittier v. Collins,* 15 R. I. 90. The opinion reads:

"Two questions are raised by the petition. The first is this: The plaintiff lends the defendant money on the faith of the defendant's representation that he has property. The defendant failing to repay the money when due, the plaintiff sues him for it in assumpsit and recovers judgment, which remains unsatisfied. The plaintiff afterwards sues the defendant in case for deceit on account of the representation, alleging it to have been false and fraudulent. The defendant pleads the judgment in assumpsit in bar of the action. Is the plea good? We think it is not. The two actions are neither identical nor

inconsistent. The plaintiff, when he sues in assumpsit, affirms the contract, and sues to recover for a breach of it. The plaintiff, when he sues in case for deceit, also affirms the contract, and sues for damages for the fraud by which he was led to enter into it. The case is clearly distinguishable from the case where A sells goods to B, being induced to sell them by B's false and fraudulent representation that he has property, and, suing B for the price, recovers judgment therefor, and then sues B in trover for the conversion of the goods. Here the two actions are inconsistent; for A, when he sues B in assumpsit, affirms the contract and treats B as the purchaser; whereas, when he sues B in trover, he is obliged to disaffirm the contract, claiming that the goods were not sold, but fraudulently obtained, the sale being void, and that he is still the owner; and this, after he has prosecuted the contract to judgment, the law will not permit him to do, because the judgment in assumpsit conclusively affirms the title of B. In the case at bar, if the false representation, instead of having been made by the defendant, had been made by a third person, the unsatisfied judgment against the defendant would evidently not bar an action on the case for deceit against such third person."

At an early period in the history of the common law a person who had suffered an injury had no right capable of vindication unless there was a writ which fitted the facts. Subsequently new writs were invented. At a later period a man had no right capable of vindication unless the facts fitted some form of pleading. Then new forms of pleading were invented. To allow a man to sue when he could not otherwise do so, the action of assumpsit was enlarged to include implied assumpsit. If the facts were that plaintiff had suffered from commission of a tort, he was allowed to "waive the tort" and to sue on an implied promise. The result was, he was allowed to recover for a tort, which he was obliged to prove, on a contract which was never made. It is said this is accomplished by employment of a fiction. Two fictions are involved: First, that plaintiff waived the necessary foundation of his action, a tort; and second, that he recovered on something which never existed, a promise. It was a queer system of thought which thus exalted form over substance and had to work out a right through pleading. The result was, of course, beneficial and just; but another feature of the system, logic, inexorable logic, seized on the fictions as facts and carried them to the bitter end. This turned what was designed as an enlargement of right into an obstacle to redress of invasion of right. As indicated, the trend of the decisions is now toward reality.

As indicated above, the essence of the doctrine of election of remedy is "choice between two inconsistent rights." (*Schenck v. State Line Telephone Co.*, 238 N. Y. 308, opinion by Cardozo, J.)

In the case under decision two distinct duties to the bank were violated, one by one individual, and the other by another individual. The company was enriched at the bank's expense and was under duty to refund. The bank had a corresponding right. The bank's deprivation and the company's enrichment were caused by Braly, who was under duty to the bank not to deceive and defraud. The bank had a corresponding right against him. The plain, common sense of the situation is, the bank had two consistent rights and two consistent and concurrent remedies to obtain reparation, one against the company which profited, and one against the wrongdoer who did not profit, but who caused the bank's loss.

In the case of *Commercial Trust Co. v. Burch,* 267 Fed. 907, and related cases referred to in the opinion, it appeared a county issued notes for borrowed money. The notes were illegal, and the county repudiated them. The money was used, however, to extinguish lawful claims against the county, and a holder of some of the notes properly sued the county for money had and received. Plaintiff then sued the county officers, including Burch, for deceit and fraud in issuing the notes. Burch had formally certified in a written opinion that the notes were valid, when he knew better. The action against the county for money had and received was pleaded in bar of the tort action. The opinion reads:

"A plea in bar is made, based on the pendency of the suits against the county and bank, which are dealt with in other opinions (267 Fed. 897, 901), which are said to be antagonistic to this suit. There is no antagonism, though the result of those against the county may greatly affect the damages recoverable in this. They are rather supplementary than antagonistic. In none of the suits does the plaintiff repudiate or seek to rescind the transaction. In all it seeks to follow the situation to its lawful results. . . . The enforcement, so far as it may be enforced, of a contract, is not inconsistent with a suit for the fraud which induced it. (Citations.)" (p. 913.)

In the present case we have no conversion assented to, and then an attempt to retake, as in the Ireland-Waymire case. Aside from the superfluous and unproved assertion of collusion, the bank stood on facts, and on the same facts in both the bankruptcy court and the probate court. No fact was asserted in one court which was denied in the other. Forms of action and fictions in pleading are abolished in this state. A plaintiff states the facts constituting his cause of action in plain and concise language, without repetition. In this instance the transaction was just what it was stated to be,

and there is no ground for superseding the facts by a pure fiction that the bank advanced money to the company under its promise to repay, and then by another pure fiction that by adopting the first fiction the bank voluntarily relinquished its known right against the tort-feasor who created the predicament. In the bankruptcy court the bank was constrained to put the case on the fictitious basis that the company impliedly promised to repay the bank's advancement. Otherwise the bankruptcy court would not entertain the claim. The proceeding against Braly's estate does not repudiate the implied promise. It affirms the promise, and the affirmation is perfectly consistent with the further affirmation that the promise was induced by Braly's deceit and fraud to the bank's damage in the amount 'of the advancement.

The case of *Shonkweiler v. Harrington,* 102 Neb. 710, relied on by the administratrix, involved the question whether there was a bailment or sale of wheat left at an elevator. By filing a claim in bankruptcy against the elevator company, plaintiff elected to rely on a sale. In an action of tort for conversion of the wheat, commenced against officers of the elevator company, it was held in effect the elevator company could not own the wheat by purchase from plaintiff for purpose of an action for price, while plaintiff owned the wheat for purpose of action for damages against officers of the company. In this instance there is in fact no antagonism between the right of the bank against the company and the right of the bank against Braly, and the bank may pursue both until it recoups its loss. Of course, there may be but one satisfaction. Under the facts of this case, section 299 of Woodward on the Law of Quasi Contracts applies:

"As has been stated, the obligation of joint wrongdoers to pay damages is held in America to be joint and several; while the obligation to make restitution, upon principle at least, is several . . . May the person injured sue one of two joint wrongdoers for damages and the other for restitution? Or is an election as to one conclusive in favor of both? The authorities are not harmonious, but the true rule is believed to be that, subject to the limitation that a judgment in favor of or against one tort-feasor may be held to bar all subsequent proceedings against the other . . ., the person injured is entitled to a separate election against each tort-feasor. (Citations.) It has been contended that the bringing of an action for goods sold and delivered against one joint tort-feasor is an election to treat the transaction as a sale, and that subsequently to bring suit for damages against another is inconsistent and absurd. But a conclusive answer to this argument is that it rests solely upon the fiction

that the bringing of assumpsit turns a conversion into a sale; that this fiction is indulged for the purpose of giving a remedy and should not be employed to deny a remedy; and that there is no injustice or hardship to two joint wrong-doers in allowing a separate election of remedies against each."

The judgment of the district court is affirmed.