No. 33,124

BOGGS OIL AND DRILLING COMPANY, a Partnership, *Appellee*, v. HELMERICH & PAYNE, INC., *Appellant.*

(67 P. 2d 579)

Opinion filed May 8, 1937.

*Schuyler C. Bloss,* of Winfield, *Eugene O. Monnet* and *Royce H. Savage,* both of Tulsa, Okla., for the appellant.

*W. N. Banks,* of Independence, *Olin B. Scott* and *Harold W. Herrick,* both of Winfield, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action on an oil and gas drilling contract. Judgment was in favor of the plaintiff, and defendant appeals.

On December 21, 1928, the defendant, Helmerich & Payne, Inc., owned a block of oil and gas mining leases in McPherson county, Kansas. Plaintiff, the Boggs Oil and Drilling Company, was a drilling contractor. On that date (December 21, 1928) the defendant

entered into a written contract with the plaintiff whereby plaintiff agreed to drill a test well on defendant's property for a certain price, and upon terms and conditions specified. The plaintiff was to furnish "all machinery, including derrick, drilling rig, all pipe, water, fuel and labor."

Thereafter, on or about January 14, 1929, plaintiff entered into a written contract with the Phoenix Pipe and Supply Company whereby the supply company agreed to furnish certain casing to the plaintiff for use in the drilling of the well. In consideration for the use of the casing the plaintiff agreed to assign to the supply company oil and gas leases on certain described land. These leases were owned by defendant company and were to be transferred to plaintiff under the drilling contract, and were thereafter to be assigned to the supply company.

The contract with the supply company provided that the supply company would furnish the casing to plaintiff so as not to cause any delay in the drilling of the well. If there was delay in the delivery of such casing caused by the negligence of the supply company the supply company was to pay plaintiff at the rate of fifty dollars per day for all shut-down time.

One Broadhurst was the representative of the defendant company. About May 1, 1929, Broadhurst, as the representative of defendant, informed plaintiff that the supply company was "in a jam," and that defendant would furnish the pipe for drilling the well, and Broadhurst further stated that defendant would assume the pipe contract and furnish the casing under the contract. Thereafter defendant did furnish to the plaintiff the casing which the supply company was to furnish under the pipe contract. Defendant never assigned to plaintiff the leases which the plaintiff had agreed to assign to the supply company. There is nothing in the record to show a formal assignment of the pipe contract by the supply company to the defendant, but it does show that the supply company did not perform its obligations under the contract.

This action was commenced on August 8, 1933. Plaintiff's petition sets out six separate causes of action. At the close of plaintiff's testimony defendant's demurrer was sustained as to all causes of action except the third and fifth. The case was tried by the court without a jury and judgment rendered for the plaintiff upon the third and fifth causes of action.

The single question is whether plaintiff's cause of action is barred

by the statute of limitations. Defendant contends that both causes of action upon which plaintiff obtained judgment were based on oral contracts and were therefore within the three-year statute.

In defendant's brief it is stated:

"Plaintiff's fifth cause of action asked for judgment against the defendant for the sum of $350, based upon three and one half days' work in reducing the hole being drilled on the Klassen lease. This action was founded upon the provision of the written contract between plaintiff and defendant by which defendant agreed to pay plaintiff the sum of $100 per day of twenty-four hours for all time spent in testing nonproducing sands above contract depth."

This seems to be an accurate statement, and as defendant admits this cause of action accrued when the well was completed on November 1, 1929, all question as to this cause of action is eliminated. It was based on the written drilling contract and the action was brought within five years.

The important question in this case hinges on the third cause of action, wherein plaintiff alleged: That in the contract between plaintiff and defendant, plaintiff was to furnish the casing for the test well; that the defendant, as an inducement to the plaintiff for signing the drilling contract, and as a part of the same transaction, tendered to plaintiff a contract with the Phoenix Pipe and Supply Company, duly signed by that company, to furnish the casing; that in the drilling contract between plaintiff and defendant certain leases were described which were to be assigned to plaintiff as a part of the consideration for drilling the well; that in the contract with the supply company, certain of said leases were referred to as being the consideration moving to the supply company for furnishing the casing. The casing to be furnished by the supply company was to come from certain wells then being drilled, the location of which was designated in the supply company's contract; that thereafter and before it was necessary for plaintiff to use any casing, the defendant took possession of the casing, thereby rendering it impossible for the supply company to furnish the casing under its contract with the plaintiff. It was further alleged that before the time when it was necessary to use the casing, the agent and representative of the defendant informed the plaintiff that the defendant had taken possession of the casing which the supply company was to furnish the plaintiff, and that defendant had taken over the contract between the supply company and the plaintiff and would furnish the casing for drilling the test well, and that plaintiff relied upon said agreement, and plaintiff released the supply company from its obligations

under its contract. Because of the assumption of the pipe contract by defendant, defendant did not assign the leases to plaintiff as provided in the pipe contract, but retained the leases and received the benefit of the pipe or supply company contract. In pursuance to the agreement so assumed by defendant, the defendant did furnish the casing to plaintiff, but failed and neglected to furnish the casing at the time necessary for prompt drilling, and because of such failure and delay by defendant, the plaintiff was compelled to and did shut down the test well which was being drilled; that plaintiff became entitled to compensation by reason of such neglect and failure in the sum of fifty dollars per day, and defendant thereby became indebted to plaintiff in the sum of $2,350.

Defendant contends the third cause of action is barred by our statute of limitations, which provides that "An action upon contract, not in writing, express or implied" must be brought within three years. (G. S. 1935, 60-306.)

In support of this contention we are presented with an elaborate and careful brief by appellant. The first case, *Guild v. McDaniels,* 43 Kan. 548, 23 Pac. 607, is quoted at length. In that case a surety who had paid the obligation of the principal debtor brought action against the principal. Under the circumstances the court held there was a contract implied in law, and that it came within the three-year statute. Likewise, *Brown v. Pilcher,* 60 Kan. 860, 58 Pac. 560, and *Burrows v. Johntz,* 57 Kan. 778, 48 Pac. 27, were quasi-contract cases. Many cases from other jurisdictions where the law imposed a duty to make restitution are also called to our attention.

We do not think these cases determine the question before us. However, as the cases are urged with certitude as controlling, it seems desirable to direct attention to certain fundamental distinctions in the classification of contracts.

The statute above quoted recognizes that contracts not in writing may be either express or implied. Implied contracts may be implied in fact or implied in law. Contracts implied in law are not true contracts—are not included in the Restatement of Contracts, but are grouped with constructive trusts in the Restatement of Restitution and Unjust Enrichment. Where, therefore, the term "implied contract" appears in a statute it becomes a question of construction, whether it includes quasi contracts, as well as true implied in fact contracts. To show that quasi contracts are within the three-year statute, in addition to the cases above noted, the case of *Jones v. School District,* 26 Kan. 490, is apposite. In that case the action

was to recover money paid to a school district by mistake. The court said:

"On the face of the petition it appears that the moneys paid over by plaintiff to defendant were paid while he was county treasurer of Howard county, which payment was made more than three years before the commencement of this action. Now, whatever right of action plaintiff has under such circumstances springs not from any express promise in writing, but arises from the implied duty of the defendant to pay to anyone moneys which through mistake it has received from such person. The obligation is not one founded upon a written contract, but springs from an implied obligation to return moneys it has improperly received. But such a cause of action is barred by the statute of limitations at the end of three years." (p. 491.)

The cases relied upon by defendant were quasi-contract cases. It is conceded such implied promises are within the three-year statute. In the case before us we are dealing with an express contract, and the only question is whether the contract adopted by the defendant was a contract in writing within the meaning of the statute of limitations.

In *Brick Co. v. Gas Co.*, 82 Kan. 752, 109 Pac. 398, the first paragraph of the syllabus reads:

"If a written contract executed by A and B be accepted by C, and acted upon by A and C, although the contract be not assigned by B it becomes the contract of C as fully as if formally assigned to him."

In the opinion in that case it was stated that "if the defendant accepted the contract and acted thereunder it became the written contract of the latter." (p. 754.) (See, also, *Marks v. Chumos*, 82 Kan. 562, 109 Pac. 397; *Sasseen-Grinnell v. Bokel*, 132 Kan. 116, 294 P. 2d 661; *Wiggins Ferry Co. v. O. & M. Railway*, 142 U. S. 396, 12 S. Ct. 188, 35 L. Ed. 1055.)

We think this case is within the rule stated in *Brick Co. v. Gas Co.*, supra, and no reason is suggested why we should depart from the principle there declared. The defendant having adopted the contract between the plaintiff and the supply company, and having carried out that contract by supplying the pipe as therein specified, and having retained the oil and gas leases which constituted the consideration for that contract, we hold it is bound by that contract. The defendant, having received the benefit of the contract, should bear its obligations, and is liable for the shut-down time as found by the trial court. By adoption it became the written contract between the parties and came within the terms of the five-year statute of limitations.

The judgment is affirmed.