No. 33,502

FLORENCE E. HYLAND, *Appellant,* v. P. J. DEWEY, *Appellee.*
(73 P. 2d 1038)

Opinion
filed December 11, 1937.

*J. R. Hyland* and *H. N. Hyland,* both of Washington, for the appellant.

*A. C. Bokelman,* of Washington, and *John C. Hartigan,* of Fairbury, Neb., for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action for the recovery of money. The petition was in two counts—the first count was upon a written contract and the second count was upon an implied contract. The trial court sustained a demurrer to plaintiff's evidence and directed a verdict in favor of the defendant. Plaintiff appeals.

The Hollenberg State Bank had a capital stock of $10,000, divided into one hundred shares of $100 each. The defendant Dewey owned ten shares of the stock.

In 1924 the bank, in satisfaction of debts, acquired title to certain lands. Part of this land was sold, but in 1929 the bank owned and had title to 520 acres. The statute, G. S. 1935, 9-151, required that the land be sold, or charged off out of the earnings or surplus of the bank. The petition alleges that a short time prior to March 11, 1931, two of the stockholders, R. A. Hyland and George Patterson, advanced the sum of $20,000 to the bank to enable the bank to charge off and out of the assets of the bank the real estate as carried on the books. (The testimony of R. A. Hyland, however, shows the land was charged out of the book assets of the bank in 1929.) On the 11th day of March, 1931, the stockholders of the bank, including the defendant Dewey, entered into the following written agreement:

"WHEREAS, The Hollenberg State Bank, of Hollenberg, Kan., is the owner of the following-described real estate, to wit: (Description of land).

"AND WHEREAS, A part of said land is mortgaged to Trevett, Mattis & Baker for $4,000, and R. A. Hyland has advanced the sum of $15,000, and George Patterson has also advanced the sum of $5,000, in charging said lands out of the assets of said bank. It is hereby agreed by and between the undersigned stockholders of said bank that said land shall be sold during the year 1931, at a price to be agreed upon by a majority of the undersigned stockholders. If the amount received from the sale of said land shall be insufficient to pay the amount so advanced by R. A. Hyland and George Patterson, with 6 percent interest, then in that event each of the undersigned stockholders agree to contribute to the payment of such deficit such proportion thereof as the shares owned by him or her bears to the 100 shares of the capital stock of said bank: *Provided, however,* This guaranty is not a continuing security and shall not extend or apply after December 31, 1931."

It is alleged that thereafter R. A. Hyland and George Patterson duly assigned and transferred their rights thereunder to the plaintiff; that the land was not sold until 1933; that the loss or deficit remaining unpaid on each share of stock after such sale was $146. As defendant was the owner of ten shares, plaintiff asks judgment against the defendant for $1,460 with interest from May 5, 1933, until paid.

The last clause of the written agreement expressly provided that "this guaranty is not a continuing security and shall not extend or apply after December 31, 1931." Any liability of defendant Dewey, therefore, was upon the express condition precedent that the land be sold, and the extent of his liability be ascertained before the date named. It is admitted the land was not sold until 1933. The condition upon which his liability, if any, was to arise, did not occur, and the contractual duty of the defendant thereunder was discharged. This seems to have been the view of the trial court, and the directed verdict for the defendant on the first count must be sustained.

Coming now to the second cause of action, we quote from the brief on behalf of the plaintiff:

"Action for recovery of money; first cause of action based upon an express written contract copy being attached to petition, and shown in abstract; second cause of action based upon an implied contract for money advanced for benefit of appellee by the assignors of the appellant."

The second count "refers to and makes each and all of the statements, allegations and averments contained in the first cause of action" a part of the second cause of action insofar as they are applicable. The written contract of March 11, 1931, is referred to and made a part of the second cause of action, and the assignment of the written contract to the plaintiff is again alleged. It is further alleged that "the plaintiff is now the legal owner and holder of this claim and cause of action" and the prayer is for judgment as in the first count.

We pause to remark that while the first count is based on the written contract, it contains allegations tending to raise a quasi-contractual obligation on the part of the defendant to make contribution to the assignors of the plaintiff; the second count, while stressing facts which would tend to raise a quasi-contractual duty on the part of the defendant to make contribution, nevertheless again pleads the written contract and seems to ask for judgment

thereon. The distinction between the first and second counts, if any there be, seems to be one of emphasis. We will, however, assume, as stated in brief for plaintiff, that the second count is upon an implied contract. If it was an implied contract it was a contract implied in law—that is, if there was any liability on the part of the defendant it was a quasi-contractual obligation. In the Restatement of Contracts, section 5, *comment a,* it is stated:

"Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent. Implied contracts must be distinguished from quasi-contracts, which also have often been called implied contracts or contracts implied in law. Quasi-contracts, unlike true contracts, are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice. Such obligations were ordinarily enforced at common law in the same form of action (*assumpsit*) that was appropriate to true contracts, and some confusion with reference to the nature of quasi-contracts has been caused thereby."

See, also, 13 C. J. 240, 241; *Boggs Oil & Drilling Co. v. Helmerich & Payne, Inc.,* 145 Kan. 747, 750, 67 P. 2d 579; *First Nat. Bank v. Matlock,* 99 Okla. 150, 226 Pac. 328, 36 A. L. R. 1088.

Did the second count state a cause of action? It alleges that Hyland and Patterson advanced $20,000 for the purpose of charging off said real estate, and "that by reason of the foregoing matters and things, the said Dewey became, and was indebted to the said Hyland and Patterson, in the said sum of $1,460."

The advancement of the money by Hyland and Patterson to the bank seems to have been a voluntary act on their part. The statute required the land to be sold within thirty days after the expiration of the five-year period or "charged off out of the earnings or surplus of said bank." (G. S. 1935, 9-151.) Under the circumstances stated, were the stockholders under a duty to advance to the bank the $20,000 required to charge the land out of the bank? No statute has been cited imposing any such duty on the stockholders. The general rule as to contribution is thus stated in the Restatement of Restitution and Unjust Enrichment:

"Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct." (Sec. 81.)

See, also, 4 Pomeroy's Equity Jurisprudence, 3362; 13 C. J.

822; *Lansdale's Administrators and Heirs v. Cox,* 23 Ky. 401; *Gross v. Davis,* 87 Tenn. 226, 11 S. W. 92, 10 Am. St. Rep. 635.

It may be conceded that the advancement of the money to the bank by Hyland and Patterson conferred a benefit on the other stockholders. But the mere fact that a person has been benefited by another is not of itself sufficient to require restitution or contribution. A person is entitled to choose with whom he deals, and is not required to become an obligor unless he so desires. In other words, unless under the circumstances all the stockholders were under a duty to advance their ratable proportion of the loss, Hyland and Patterson could not thrust a benefit on the other stockholders and then demand contribution. No such duty is here shown, and therefore the second count fails to state a cause of action.

But even if it be admitted that a cause of action on a quasi contractual obligation for contribution was stated, it is barred by the statute of limitations. (*Boggs Oil & Drilling Co. v. Helmerick & Payne, Inc.,* supra.) The directed verdict in favor of the defendant on the second cause of action is sustained.

The judgment is affirmed.