No. 35,193

Mazel L. Sharp, *Appellant*, v. W. H. Sharp, *Appellee*.

(117 P. 2d 561)

Opinion filed October 11, 1941.

*Sullivan Lomax,* of Cherryvale, for the appellant.

*L. P. Brooks,* of Wichita, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This appeal is from a judgment sustaining a demurrer to plaintiff's amended petition.

On December 31, 1920, in the district court of Montgomery county, Mazel L. Sharp secured a decree of divorce against W. H. Sharp. The care, custody and control of the two minor children—a girl aged nine and a boy aged seven—were awarded the plaintiff. It was adjudged and decreed that the defendant W. H. Sharp pay to the plaintiff the sum of fifty dollars per month for the support, maintenance and education of the children; that in addition thereto the defendant should pay all drug bills, doctor bills or other expenses incident to the sickness of the children. The daughter became of age in July, 1932, and the son in July, 1934.

The amended petition, after setting forth the foregoing facts, alleged the "defendant failed, neglected and refused to make all the payments due as was by the court ordered;" that he made payments every few months and that the last payment was made on September 27, 1938. It was alleged that plaintiff had expended large sums for hospital and doctor bills for both of the children out of her own funds; that such bills had been sent to the defendant, but that defendant had neglected and refused to pay them. Plaintiff alleged that all the money paid by defendant under the decree was applied by the plaintiff to the support, education and maintenance of the children. It was alleged there was a balance due on the monthly payments of $4,900.15, and for doctor bills and hospital bills the sum of $213.80. Plaintiff demanded judgment against defendant in the sum of $5,113.95 and for costs of the action.

If the action was barred by the statute of limitations the judgment of the trial court in sustaining the demurrer to the petition must be sustained.

Our statute, G. S. 1935, 60-1510, provides that when a divorce is granted, the court shall make provision for the custody, support and education of the minor children of the marriage. The section contemplates that provision shall be made for the support and education of the children until they become of age. (*Emery v. Emery,* 104 Kan. 679, 180 Pac. 451.)

Under the statute the court has a continuing jurisdiction to modify or change any order as to the support and education of such minor children when the circumstances render such change proper (*Green-*

*wood v. Greenwood,* 85 Kan. 303, 116 Pac. 828; *Dague v. Dague,* 126 Kan. 405, 267 Pac. 988), but such order must operate prospectively. (*Davis v. Davis,* 145 Kan. 282, 65 P. 2d 562; *Wilkinson v. Wilkinson,* 147 Kan. 485, 77 P. 2d 946.)

With respect to installments due and unpaid, the judgment was final. (*Burnap v. Burnap,* 144 Kan. 568, 61 P. 2d 899; *Wilkinson v. Wilkinson,* supra.) In *Paul v. Paul,* 121 Kan. 88, 245 Pac. 1022, in a divorce action in Nebraska, an order for temporary alimony payable in installments was made. An action on the judgment for the unpaid installments was brought in this state. As the order as to the unpaid installments had not been modified by the Nebraska court, it was held the judgment was final and the action would lie. The rule is the same in other jurisdictions. (2 Beale, Conflict of Laws, p. 1393.)

In *Cheever v. Kelly,* 96 Kan. 269, 150 Pac. 529, it was held, as stated in the syllabus:

"When installments of alimony awarded by a decree of divorce and alimony become due and are not paid they may be collected by suit, judgment, and execution, although the decree provided it should not be a lien on the defendant's property." (Syl. ¶ 2.)

As the court is without power to modify or change past-due installments for the support and education of minor children (*Davis v. Davis,* supra), we think such accrued unpaid installments may be collected by suit, judgment and execution the same as past-due unpaid alimony installments. (2 Freeman on Judgments, 5th ed., § 1067.)

The rule is firmly established that when recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due, and the rule applies to judgments payable in installments. (*McGill v. McGill,* 101 Kan. 324, 166 Pac. 501; 34 C. J. p. 1088; 2 Freeman on Judgments, 5th ed., § 1077; 34 Am. Jur., Limitations of Actions, § 142; Anno., 82 A. L. R. 316.)

Was the present action barred by the statute of limitations? Was the statute tolled by the last payment made by defendant? It will be recalled that the youngest child became of age in July, 1934, and that defendant made the last payment on September 27, 1938. The present action was commenced in July, 1940.

Our statute, G. S. 1935, 60-306, provides:

"Civil actions, other than for the recovery of real property, can only be

brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"*First.* Within five years: An action upon any agreement, contract or promise in writing.

"*Second.* Within three years: An action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"*Sixth.* An action for relief not hereinbefore provided for can only be brought within five years after the cause of action shall have accrued."

Our statute, G. S. 1935, 60-312, provides:

"In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same, shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby."

It is obvious we must determine whether the judgment sued on was an "implied contract" within the meaning of subdivision two of section 60-306, and whether the word "contract" in section 60-312 is broad enough to embrace such judgment.

In view of the contentions urged by counsel for plaintiff it may be worth while to examine the meaning of the term "implied contract" as used in subdivision two of section 60-306.

Implied contracts are often spoken of as implied in fact and implied in law.

Contracts implied in fact are true contracts. The distinction between an express contract and a contract implied in fact lies merely in the mode of manifesting assent.

Quasi contracts—contracts implied in law—are not true contracts. They are obligations created by law for reasons of justice. A quasi contract is no more than a legal device to enforce noncontractual duties. Such obligations were enforced at common law by the action of general assumpsit. (Restatement, Contracts, § 5, *Comment a; Hyland v. Dewey*, 146 Kan. 797, 73 P. 2d 1038; 17 C. J. S. Contracts, §§ 3, 4, 6.)

The development of the common-law action for the enforcement of these noncontractual obligations was stated by Dean Ames in "The History of Assumpsit," 2 Har. Law Rev. 53, 63:

"It remains to consider the development of *Indebitatus Assumpsit* as a remedy upon quasi contracts, or, as they have been commonly called, contracts implied in law. The contract implied in fact, as we have seen, is a true

contract. But the obligation created by law is no contract at all. Neither mutual assent nor consideration is essential to its validity. It is enforced regardless of the intention of the obligor. It resembles the true contract, however, in one important particular. The duty of the obligor is a positive one, that is, to act. In this respect they both differ from obligations, the breach of which constitutes a tort, where the duty is negative, that is, to forbear. Inasmuch as it has been customary to regard all obligations as arising either *ex contractu* or *ex delicto,* it is readily seen why obligations created by law should have been treated as contracts. These constructive duties are more aptly defined in the Roman law as obligations *quasi ex contractu* than by our ambiguous 'implied contracts.'

"Quasi contracts are founded (1) upon a record, (2) upon a statutory, official, or customary duty, or (3) upon the fundamental principle of justice that no one ought unjustly to enrich himself at the expense of another."

The distinction between true contracts and quasi contracts (or constructive contracts) was stated in the leading case of *Hertzog v. Hertzog,* 29 Pa. St. 465, 467. The court said:

"It is quite apparent, therefore, that radically different relations are classified under the same term, and this must often give rise to indistinctness of thought. And this was not at all necessary; for we have another well-authorized technical term exactly adapted to the office of making the true distinction. The latter class are merely *constructive* contracts, while the former are truly implied ones. In one case the contract is mere fiction, a form imposed in order to adapt the case to a given remedy; in the other it is a fact legitimately inferred. In one, the intention is disregarded; in the other, it is ascertained and enforced. In one, the duty defines the contract; in the other, the contract defines the duty.

"We have, therefore, in law three classes of relations called contracts.

"1. Constructive contracts, which are fictions of law adapted to enforce legal duties by actions of contract, where no proper contract exists, express or implied.

"2. Implied contracts, which arise under circumstances which, according to the ordinary course of dealing with the common understanding of men, show a mutual intention to contract.

"3. Express contracts, already sufficiently distinguished."

See, also, *Railway Co. v. Gaffney,* 65 Ohio St., 104, 61 N. E. 152; *Miller v. Schloss,* 218 N. Y. 400, 113 N. E. 337; *State Bank v. Braly,* 139 Kan. 788, 33 P. 2d 141.

Owing to the amphibious nature of "implied contracts" the courts have found much difficulty in the construction of statutes where that expression is used. This difficulty was adverted to in *Nevada Co. v. Farnsworth,* 89 Fed. 164, where it was said:

". . . The whole theory of contracts implied in law was originated for the purpose of giving a remedy *ex contractu* for certain wrongs, and it does not promote clear thinking to embrace in one classification two things so es-

sentially different as an obligation based on the consent of the parties and one imposed by law, from motives of public policy, frequently against the intention of the parties. But, however unscientific such a classification is, simple implied contracts are usually subdivided into contracts implied in fact and contracts implied in law. The first, it is needless to say, is a true contract, the agreement of the parties being inferred from the circumstances; the latter but a duty imposed by law, and treated as a contract for the purposes of a remedy only. This classification of implied contracts makes it difficult to interpret a statute where the term is used. In each case it becomes a question whether the general meaning, or the more limited, if more accurate, meaning, was, by the legislature, intended."

See, also, *Philpott v. Superior Court*, 1 Cal. 2d 512, 36 P. 2d 635, 95 A. L. R. 990; *McCall v. Superior Court*, 1 Cal. 2d 527, 36 P. 2d 642, 95 A. L. R. 1019.

The general rule is that quasi contracts are "implied contracts" within the meaning of subdivision two of section 60-306, and the action on such obligations must be brought within three years. (*Jones v. School District*, 26 Kan. 490; *Boston Safe Deposit and Trust Co. v. Boyd*, 139 Kan. 411, 32 P. 2d 218; *Boggs Oil & Drilling Co. v. Helmerich & Payne, Inc.*, 145 Kan. 747, 750, 67 P. 2d 579.)

We are thus brought to the question whether the judgment sued on is to be classed as a contract under the statutes above quoted.

In Woodward on Quasi Contracts, section one, the author states:

"The term 'quasi contracts' may with propriety be applied to all noncontractual obligations which are treated, for the purpose of affording a remedy, as if they were contracts. So interpreted, the subject includes: (1) judgments and other so-called contracts of record. . . ."

In 1 Freeman on Judgments, 5th ed., § 6, it is stated:

"The question whether a judgment is a contract is one upon which no hard-and-fast rule may be laid down, but must be determined in connection with the particular circumstances under which it arises. Considered abstractly it is doubtless true, as already stated, that a judgment lacks the essential elements of a contract. But, though it be conceded that a judgment is not a contract, yet perhaps courts are justified, in some cases, in treating it as though it were a contract, or, rather, in determining that the word 'contract,' as used in some statutes, was intended to include judgments. . . ."

In *Douglass v. Loftus, Adm'x*, 85 Kan. 720, 119 Pac. 74, it was held that a judgment was so far contractual in nature as to fall under the protection of the provisions of the federal constitution against legislation impairing the obligation of contracts. However, in the early case of *Burnes v. Simpson*, 9 Kan. 658, it was held that a domestic judgment was not a contract within the meaning of the

statute of limitations. It was therefore held that such action was governed by the omnibus clause (G. S. 1935, 60-306, subdiv. 6), and was barred in five years.

In *Mawhinney v. Doane,* 40 Kan. 676, 17 Pac. 44, it was held:

"An action on a domestic judgment is barred in five years from and after the rendition thereof, when no execution has been issued thereon, or no order for the revivor or no action in the nature of revivor has been made, or had." (Syl. ¶ 2.)

See *Schuyler Co. Bank v. Bradbury,* 56 Kan. 355, 43 Pac. 254.

The statute of limitations began to run from the period fixed for the payment of each installment as it became due, for the part then payable. Unless kept alive by execution each installment was barred at the expiration of five years. (*City of Topeka v. Ritchie,* 102 Kan. 384, 170 Pac. 1003.)

As the obligation of the defendant ceased with the majority of the youngest child (July, 1934) the action was barred unless the payment on the judgment in September, 1938, would remove the bar. Was the judgment a contract within the meaning of G. S. 1935, 60-312? As we have held that the judgment was not an implied contract under section 60-306, it would be anomalous to hold that "contract" in the part payment statute was broad enough to embrace judgments. In the well-considered case of *Olson v. Dahl,* 99 Minn. 433, 109 N. W. 1001, 8 L. R. A., n. s., 444, it was held that a partial payment on a judgment debt did not operate to toll the statute. We agree with the conclusion reached in that case and hold the payment in September, 1938, did not toll the statute.

For the reasons stated the judgment must be affirmed. It is so ordered.