**PANHANDLE EASTERN PIPE LINE COMPANY, Appellant,**

v.

**Charles A. BRECHEISEN, Appellee.**

**No. 7202.**

United States Court of Appeals
Tenth Circuit.

Sept. 30, 1963.

---

John D. Townsend, Kansas City, Mo. (Wendell J. Doggett, Oklahoma City, Okl., Hershberger, Patterson, Jones & Thompson, and Richard Jones, Wichita, Kan., were with him on the brief), for appellant.

Dale M. Stucky, Wichita, Kan. (Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt and David W. Buxton, Wichita, Kan., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Panhandle Eastern Pipe Line Company appeals from an adverse and summary judgment entered in the District of Kansas and holding that Panhandle's alleged claim was barred by Kansas statutory limitation applicable to contract actions not based upon written instruments. Panhandle asserts that the court erred in concluding that its cause of action was not based upon a written contract and, in the alternative, that its action was commenced within the statutory time limitation applicable to implied contracts.[1] The latter contention requires an interpretation of Rule 12(b), F.R.Civ. P., as premised against rather unusual circumstances.

1. Kansas has a five year limitation upon actions based upon written contracts; three years upon contracts not in writing. G.S. 60–306 provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

"First. Within five years: An action upon any agreement, contract or promise in writing.

"Second. Within three years: An action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty. * * *"

Panhandle is the owner and operator of an interstate gas line and purchases quantities of gas produced in the Kansas Hugoton Gas Field. By complaint filed January 16, 1961, and founded upon diversity jurisdiction, Panhandle alleged, in pertinent summary, that it had on January 22, 1952, entered into a written gas purchase contract with appellee and other sellers for the purchase of gas at an agreed contract price; that on May 20, 1953, the Corporation Commission of Kansas put in effect a minimum price-fixing order which required Panhandle to pay to appellee a price greater than that set by contract; that under compulsion of the Commission's order Panhandle paid to appellee such increased prices until the determination by the Supreme Court of the United States in Cities Service Gas Co. v. State Corporation Commission, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355, decided January 20, 1958, that the Kansas minimum price order was invalid as beyond the Corporation Commission's jurisdiction; that Panhandle was entitled to recover from appellee the adjusted net amount of overpayments made.

To such complaint appellee filed a comprehensive answer, denying among other things that he was a signatory to the gas purchase contract and qualifying his pleading by stating:

"1. By fully answering herein, defendant does not waive and hereby specifically reserves and relies upon the following defenses: lack of jurisdiction over the subject matter; lack of jurisdiction over the person; insufficiency of process; insufficiency of service of process; failure to state a claim upon which relief can be granted; and failure to join an *indispensible* party."

After the exhaustion of discovery and pre-trial procedures and the filing of an amended complaint the case was submitted to the trial judge upon undisputed facts showing that appellee had not signed the gas purchase contract with Panhandle but had leased his land to one Ballard on July 11, 1951, in a lease which was not standard in form, providing for the lessor's consideration thus:

"It is Agreed that the lessor shall receive the same price per thousand cubic feet of gas, computed on the same pressure base for lessor's gas as the lessee receives from the sale of lessee's portion of gas.

"In consideration of the premises, the said lessee covenants and agrees: To deliver to the credit of the lessor, free of cost, except for taxes, in the pipe lines or tanks to which he may connect his wells, nine-sixteenths (9/16ths) of all oil and gas produced and saved from said leased premises which is produced and saved above 3,000 feet."

After drilling a productive well Ballard sold the gas to be produced in a contract with Panhandle which provided:

"Buyer will pay and discharge all royalty payments becoming due to royalty owners or landowners on all gas sold and delivered hereunder; however, Sellers shall hold Buyer free and harmless from any and all liability resulting from making such payments."

Thereafter, appellant sought the signatures of all parties having an interest in the well to a gas division order referring to the terms and conditions of the contract, but the appellee refused to sign the order. Instead he executed a separate order directing that 9/16 royalty interest be paid him.

Panhandle now asserts that its action is nevertheless premised upon a written instrument because appellee adopted the contract as his own and because Ballard was an agent to sell appellee's gas and the sale was ratified by the execution of the separate division order. Support for such theory is claimed in the decision of the Kansas Supreme Court in Boggs Oil & Drilling Co. v. Helmerich & Payne, Inc., 145 Kan. 747, 67 P.2d 579. However, the Boggs Oil case demonstrated an acceptance of the obligations and consider-

ation of the entire contract. Here, appellee could not and did not undertake to perform the contract for the lessee, Ballard; he merely accepted the compensation determined to be payable to him as a royalty interest holder.

The concept of a sale of gas owned by appellee, separate from the larger volume of gas sold under the contract, arises from two provisions of the lease referring to "lessor's gas" and "the delivery of nine-sixteenths of all oil and gas to the lessor's credit." By contrast, the same lease specifically reserves to the lessor all oil and gas rights below depth of 3,000 feet and provides for the delivery of gas for home consumption, and further refers to the lessor's interest as royalties. Since the question of whether or not title passes upon production must be determined from the lease, Greenshields v. Warren Petroleum Corp., 10 Cir., 248 F. 2d 61, deposition evidence was considered to explain the ambiguity created by the two provisions. The lessees testified that Mr. Brecheisen had requested, and they had so phrased, the provision to prevent the possibility of two prices being paid for gas out of the same hole—there was no concern about the ownership or the passage of title. Similarly, it is apparent that all parties both to the lease and to the gas purchase contract treated the oil and gas as completely controlled by the producers who warranted their title in the contract. The trial court impliedly found that the lease agreement contemplated merely a royalty interest and gave the landowner no right to demand delivery of oil or gas upon his own contract. Such an interpretation complies with the rules of construction established to give effect to the intention of the parties. See Tate v. Stanolind Oil & Gas Co., 172 Kan. 351, 240 P.2d 465.

■ Although a written contract was in existence between the lessor and the lessee and another between the lessee and the distributor of the gas, the amounts here claimed are not due under either contract. The sole basis for recovery must be found in a contract implied in law requiring a person who has been unjustly enriched at the expense of another to make restitution. The suit does not seek to enforce a provision of any contract and the price provisions of the contract are in evidence merely to demonstrate the proper difference between the price agreed upon and the price forced upon the buyers by the invalid order of the Kansas commission. In making the distinction between actions subject to the limitation of the first and second sections of G.S. 60–306, the Kansas Supreme Court quoted extensively from 53 C.J.S. Limitations of Actions, § 60 in Fairbanks v. Koelling, 167 Kan. 361, 205 P.2d 930:

"The statutory description of an action as 'founded on an instrument in writing' or equivalent phrase refers to contracts, obligations, or liabilities growing, not remotely or ultimately, but immediately, out of written instruments; and the written instrument relied on must itself contain a contract to do the thing for the nonperformance of which the action is brought. * * "

We hold that the trial court correctly determined that Panhandle's claim was not based upon a writing and is thus limited to an action for unjust enrichment or other aspects of implied contract. As we have noted, such an action must be brought within three years and the trial court held that the three year statute had run. The correctness of this ruling is dependent upon the effect an answer filed under Rule 12(b), F.R.Civ.P., and reserving a claim to insufficiency of process has in diversity cases where such answer is filed after insufficient process is made and before valid process is obtained, all in a jurisdiction where the filing of an answer under state law submits the pleader to the jurisdiction of the court for all purposes.

■ Under Kansas law, the period of statutory limitation is that period of time between the date a cause of action arises and the commencement of an action to enforce the right created. And, under Kansas law, an action is com-

menced by the service of summons,[2] such service being an integral part of the statute of limitations. See Merchants Transfer & Warehouse Co. v. Ragan, 10 Cir., 170 F.2d 987, aff'd. as Ragan v. Merchants Transfer Co., 337 U.S. 530, 69 S. Ct. 1233, 93 L.Ed. 1520. In the case at bar, Panhandle's cause of action matured on January 20, 1958, the effective date of the Supreme Court's decision in Cities Service Gas Co. v. State Corporation Commission, supra. The Complaint was filed January 16, 1961.[3] A purported service of summons was obtained on January 18 but was subsequently shown to be invalid as having been made, through inadvertence, upon appellee's son. Valid service was not obtained until August 3. Meanwhile appellee had filed its answer on February 6, a time well within the sixty-day period allowed under the Kansas statute (see footnote 2) for the perfection of service following an attempt to obtain service. Since more than three years had elapsed between the time Panhandle's cause of action arose, January 20, 1958, and the obtaining of valid service, August 3, 1961, it is apparent that the action is barred unless appellee's reservation of the defense of invalid service was insufficient to preserve the running of the period of limitation. Panhandle attacks the application of such pleading under Rule 12(b) to the circumstances of the case upon two grounds: first, that the blanket pleading of the reservation of special defenses under the rule did not give fair notice to Panhandle of the nature of the claim to invalidity of process and, second, if the reservation of special defense is valid it allows a different result to be reached in federal court than would be reached in the courts of Kansas.

We find no merit in either contention. There is no mandate in the wording of Rule 12(b) that requires pleading other than by conclusion[4] and ample time existed for Panhandle to discover, correct and perfect its service. Spearman v. Sterling Steamship Co., D.C., 171 F. Supp. 287, is patently distinguishable for in the case at bar the defense was pleaded prior to the running of the period of limitation.

Panhandle correctly points out that the ruling of the trial court allows a different result to be reached in federal court than would be reached in the courts of Kansas if projected against the same series of pleadings and events. In state court, the filing of an answer constitutes a waiver of defective service. Kansas G.S.1949, 60–2515; Wible v. Wible, 153 Kan. 428, 110 P.2d 761; Olsen v. Lambert, 158 Kan. 94, 145 P.2d 159. But the principle of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is not applicable to differences in procedure existing between federal and state practices and its mandate is limited to the prohibition of reaching a different result through different measures of the cause of action itself. Ragan v. Merchants Transfer Co., supra. Since, as stated in Ragan, the service of summons is an integral part

2. "An action shall be deemed commenced within the meaning of this article * * * as to each defendant, at the date of the summons which is served on him, or on a codefendant who is a joint contractor, or otherwise united in interest with him. Where service by publication is proper, the action shall be deemed commenced at the date of the first publication. An attempt to commence an action shall be deemed equivalent to the commencement thereof within the meaning of this article when the party faithfully, properly and diligently endeavors to procure a service; but such attempt must be followed by the first publication or service of the summons within sixty days." Kan.G.S. 1949, 60–308.

3. Rule 3, Fed.Rules of Civil Procedure, does not necessarily govern as to when an action is commenced in diversity cases. Ragan v. Merchants Transfer Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.

4. Of course the blanket and routine pleading of the reservation of special defenses without contention of merit may become an abuse of the spirit of the rule. Here, however, an invalid service did exist and the jurisdiction of the court over the subject matter might conceivably be subject to question as Pan American Petroleum v. Superior Court of the State of Delaware, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584, had not then been decided.

of the Kansas period of limitation it must be measured by Kansas law for a different rule would extend or limit the cause of action. But Rule 12(b) does not measure the cause of action; it merely permits a method of pleading which differs from Kansas practice and is purely procedural. To hold otherwise would not only render Rule 12(b) impotent in diversity cases but would place in question the application of many of the Federal Rules of Civil Procedure.

The judgment is affirmed.