No. 53,032

RICHARD L. MAI d/b/a MAI OPERATIONS, *Appellee,* v. RAY YOUTSEY AND KAISER-FRANCIS OIL COMPANY, *Appellants.*

(646 P.2d 475)

Opinion filed June 11, 1982.

*Don C. Staab,* of Hays, argued the cause, and *Douglas Richards,* of Overland Park, was with him on the brief for the appellants.

*John C. Woelk,* of Woelk, Culley and Ehrlich, of Russell, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case involves a dispute between two assignees of portions of an oil and gas lease farmed out to them by Cities Service Oil Company, over the use and maintenance of roads on the leased land. Kaiser-Francis Oil Company and its district superintendent Ray Youtsey (defendants-appellants) appeal the district court's injunction against interference with plaintiff's use of a road across the Kaiser-Francis portion of the lease and the award of damages for temporary obstruction of that road. Richard Mai d/b/a Mai Operations (plaintiff-appellee/cross-appellant) appeals a damage award of 60% of the sum defendant Kaiser-Francis expended on rock to improve the road.

The land involved in this litigation was originally leased from the Ginther family by Cities Service Oil Company for oil and gas purposes under a base lease covering 320 acres described as: The East half of Section 22, Township 12 South, Range 16 West in Ellis County, Kansas. In 1955, Cities Service assigned a portion of the lease to Mai consisting of 40 acres in the Southeast corner. In 1973 another portion of the lease, consisting of 60 acres in the Southwest corner, was assigned by Cities Service to Kaiser-Francis Oil Company. Prior to the current dispute, all oil and gas lease operators in the area informally and amicably maintained private roads for use by all. There are no public roads in the area.

The Mai lease currently has two producing wells on the southern portion of the lease and a tank battery north of the Mai lease in question. Between the producing wells and the tank battery is a deep gully. Dispute exists between the parties whether the gully could be crossed to gain access to the tank battery. The Kaiser lease currently has two producing wells, a tank battery, and a saltwater disposal well.

Shortly after the assignment by Cities Service of the portion of its lease to Mai and Mai's drilling of two producing oil wells, Mai used a road (hereafter referred to as the Cities Service road) across the portion of the lease retained by Cities Service Oil Company to go to its tank battery. Cities Service likewise used this road. By mutual consent Mai's tank battery was located north of the Mai lease on the portion of the lease retained by Cities Service Oil Company. Cities Service used a road along the south side of the Mai tract which was also used by Mai and Kewanee (an operator of an oil lease south of the Ginther land), hereafter referred to as the Mai road. Originally, Mai had an agreement with Cities Service to use a saltwater disposal well located on the portion of the lease retained by Cities Service for $25 per month per well. The salt water from Mai's two producing wells was delivered through a pipeline to the disposal well.

In 1973 when Cities Service assigned a portion of its original oil and gas lease above described to Kaiser-Francis, the saltwater disposal well and the Cities Service road were on the portion of the lease assigned to Kaiser-Francis. Thereafter, Mai and Kaiser used the Cities Service road and Mai, Kaiser and Kewanee used the Mai road. In February 1974 Kaiser-Francis increased the cost to Mai for use of the disposal well to $50 per month per well. For

25 years Mai had used the Cities Service road as a means of ingress and egress to its tank battery, and for most of that time Mai also had an agreement, which could be terminated at the will of either party, to use the saltwater disposal well now on the Kaiser lease. The saltwater disposal agreement is indirectly related to this action.

In March and April of 1980, Kaiser voluntarily and *without consulting Mai* rocked the Cities Service road at an expense of $5,844.38, and Mai, using the same contractor, spent $1,827.90 on the Mai road *without consulting Kaiser.*

In July 1980 Kaiser increased the saltwater disposal rates to $150 per well per month to every company with whom it did business. This was a prohibitive price to Mai, whose two wells were only producing four barrels of oil and eighteen barrels of salt water per day. Rather than pay the increased prices, Mai stopped using the saltwater disposal well on the Kaiser lease and began trucking its salt water off the lease. The activity of the saltwater trucks admittedly increased the traffic as well as the weight load on the Cities Service road in question, although the parties do not agree on the extent of the increase. Kaiser then approached Mai about paying one-half of the cost of the Cities Service road. Mai declined.

On October 10, 1980, Kaiser blocked the Cities Service roadway with a padlocked gate. Mai was forced to stop production and, shortly thereafter, commenced this action in district court for injunctive relief and damages. The trial court issued a temporary restraining order against Kaiser and set the case for hearing.

Kaiser answered, requesting damages and an injunction against Mai's use of the Cities Service road. The trial court heard the injunction issues November 12, 1980, and enjoined Kaiser from interfering with Mai's use of the road for customary oil operations, including saltwater trucks. The court further denied Kaiser's application for injunctive relief and ordered all matters relating to damages to be heard within 30 days. Kaiser requested such a hearing and, by order filed February 24, 1981, the court awarded Kaiser $3,050.62 for the road improvements and Mai $1,416 for lost production with costs to be divided equally between the parties. The court further ruled as to future repairs the parties should agree beforehand or, in the alternative, the party incurring the expense would be liable for the entire amount.

The dispute in this case is between two assignees of portions of an oil and gas lease given by the Ginther family as lessors to Cities Service Oil Company and concerns the use of roads on the leased land. Neither Cities Service nor the lessor landowners are parties to this litigation and it must be assumed they have no objection to the use of the road in question by any party to the litigation.

Kaiser appeals the injunction order and the damage judgment; Mai cross-appeals the damages awarded Kaiser. The action was originally filed in the Court of Appeals and subsequently transferred to the Supreme Court on this court's own motion pursuant to K.S.A. 20-3018(c).

The appellant states the issue in the case as follows:

"The basic underlying issue is whether or not the plaintiff has any right to drive large saltwater hauling trucks on defendants' oil lease road. The answer to this question centers upon the nonexistence or existence of a prescriptive easement to use defendants' oil lease road which is allegedly vested in plaintiff."

The appellant attempts to simplify the broader question by asking whether Mai is "merely a permissive user of defendant's road or does he actually possess prescriptive easement?"

The trial court awarded damages to Kaiser by giving it 60% of the cost of rocking the Cities Service road on the theory of unjust enrichment.

In our view the law of prescriptive easement has no place in this factual setting. See *Taylor Investment Co. v. Kansas City Power & Light Co.,* 182 Kan. 511, 322 P.2d 817 (1958). The equitable theory of unjust enrichment does not apply either under these facts. Because the trial court based its award to Kaiser on a theory of unjust enrichment, we will explain in greater detail our rejection of that theory.

Fundamental contract principles applied to the facts of this case reveal no basis for recovery on a theory of unjust enrichment. Neither party claims a true contract exists, either express or implied. Confusion does seem to exist, however, over the nature of implied contracts. A contract implied in fact arises from facts and circumstances showing mutual *intent* to contract. Such is clearly not the case here. A contract implied in law, or quasi contract, exists regardless of assent. It is a fiction of the law designed to prevent unjust enrichment. *Holiday Development Co. v. Tobin Construction Co.,* 219 Kan. 701, 708, 549 P.2d 1376

(1976); *Minnesota Avenue, Inc. v. Automatic Packagers, Inc.,* 211 Kan. 461, Syl. ¶ 1, 507 P.2d 268 (1973); *Witmer v. Estate of Brosius,* 184 Kan. 273, Syl. ¶ 3, 336 P.2d 455 (1959). See generally 17 C.J.S., Contracts §§ 4, 6. As this court stated in *Sharp v. Sharp,* 154 Kan. 175, 178, 117 P.2d 561 (1941), "[a] quasi contract is no more than a legal device to enforce noncontractual duties." Restitution and unjust enrichment are the modern terms for the doctrine of quasi contracts. *Wheat v. Finney,* 230 Kan. 217, 220, 630 P.2d 1160 (1981); *United States Fidelity & Guaranty Co. v. Marshall,* 4 Kan. App. 2d 9, 10, 601 P.2d 1169 (1979).

In determining whether a contract should be implied in law under the circumstances of this case, we need go no further than to note one prerequisite for unjust enrichment is a benefit conferred by the defendant on the plaintiff. 17 C.J.S., Contracts § 6. Other prerequisites to such recovery exist, see, *e.g., Hyland v. Dewey,* 146 Kan. 797, 73 P.2d 1038 (1937), but we need not examine them because admittedly no benefit was conferred on the plaintiff. Testimony revealed no problems with the road which required rocking. In fact, on cross-examination, Kaiser's production superintendent testified Mai could have used the road in its prior condition. No basis in fact existed for application of an unjust enrichment theory.

The appellant Kaiser has taken the position in testimony given at the trial, through its production superintendent, and in its brief, that Mai had the right to use the Cities Service road for every purpose in operating the Mai lease except driving saltwater disposal trucks on it. This appears to be an obvious attempt to coerce Mai into using the Kaiser saltwater disposal well at Kaiser's price. We turn now to an analysis of the lease and relevant oil and gas principles to determine whether Kaiser can so limit Mai's access.

The original lease by the Ginthers to Cities Service Oil Company recited that it was given for the following purpose:

"[F]or the sole and only purpose of mining and operating for oil and gas, and laying pipe lines, and building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land [E/2 of 22-12-16] . . . situated in the County of Ellis State of Kansas . . . ."

The lease further provides:

"If the estate of either party hereto is transferred, and the privilege of transferring in whole or in part is expressly allowed . . . the covenants hereof shall extend to and be binding on the . . . assigns . . . ."

No express provision was made for right of ingress and egress.

It is generally held that an oil and gas lease creates by implication what is necessary to effectuate the grant.

"If in the grant or reservation of a separate interest in oil and gas the grantor does not expressly grant or retain such legal relations as are necessary for the production and operation of the land for oil and gas purposes, these relations are held to be created by implication." 1A Summers, The Law of Oil and Gas § 133, pp. 229-31 (1954 rev.).

It is generally held the mineral lessee may make reasonable use of the surface of the leased land in carrying out the legitimate object of the lease. *McLeod v. Cities Service Gas Company*, 131 F. Supp. 449, 452 (D. Kan. 1955), *aff'd* 233 F.2d 242 (10th Cir. 1956). See also *Wiser Oil Company v. Conley*, 346 S.W.2d 718 (Ky. 1960); *Gulf Oil Corporation v. Walton*, 317 S.W.2d 260 (Tex. Civ. App. 1958); *Craft v. Freeport Oil Co.*, 563 S.W.2d 866 (Tex. Civ. App. 1978); 4 Summers, The Law of Oil and Gas § 652 (1962 rev.); Annot., 53 A.L.R.3d 16; 38 Am. Jur. 2d, Gas and Oil § 116. There seems no question that Cities Service, as original lessee of the mineral rights, acquired by implication a right of ingress and egress over the surface of the land. The question before us concerns the right of ingress and egress when one tract is farmed out to two assignees.

The original lease specifically provided that either party had the privilege of transferring its estate in whole or in part. It necessarily follows, if the worth of the mineral estate is to be maintained, that the implied rights of the lessee-assignor also pass to the assignee. See, *e.g., Skaggs v. Heard*, 172 F. Supp. 813 (S.D. Tex. 1959); *Sun Oil Company v. Whitaker*, 483 S.W.2d 808 (Tex. 1972); *Gulf Oil Corporation v. Walton*, 317 S.W.2d 260. As a result of subsequent assignments from Cities Service, Mai and Kaiser both have a right of ingress and egress to produce oil.

A further question arises, then, as to Mai and Kaiser's relationship to one another. We find no case directly on point, but the early case of *Compton v. Gas Co.*, 75 Kan. 572, 89 Pac. 1039 (1907), provides some guidance. In that case two oil and gas leases were granted on land occupied as a homestead by a widow and her minor children. The widow individually executed an oil and gas lease to the Pennsylvania Oil Company who subsequently assigned it to the defendant People's Gas Company. The

widow and children, then of age, later entered into an oil and gas lease for the same property with the plaintiff O. W. Compton, who sought to have the first lease declared void. The trial court found each lessee owned an undivided one-half interest in the mineral estate and each was entitled to possession of the premises as to the other. Neither was entitled to exclusive possession. The Supreme Court affirmed.

Although the issue in *Compton* dealt with the rights of lessees to the same tract of land rather than adjacent tracts, it involved leases emanating from a common source and a subsequent lessee who took with notice of the circumstances of the prior lease. In the case at bar, the lease from Cities Service to Mai was prior in time to that of Kaiser. Kaiser was on notice of the use being made of the Cities Service road by Mai. Kaiser, therefore, cannot now complain of the road use. It follows that Kaiser's prohibiting Mai access to its lease was wrongful. The question is whether and to what extent Mai was damaged. Based on testimony that Mai lost eleven days production because of the barred gate, the trial court awarded $1,416 in damages to Mai. There is no other evidence in the record upon which the trial court could have awarded damages to Mai. Damages awarded Mai were based on the value of the oil that could have been produced for those eleven days.

Actually Mai has lost no oil from delayed production because the oil reserve is still available to him. Mai's damage on his theory, if any, was the delay in recovering the oil from the reserve. The record, however, is barren as to what this damage may have been. Accordingly, Mai has failed to sustain his burden of proof to show that he was damaged.

Still unresolved is the issue of damages on Kaiser's cross-claim for improvement of the Cities Service road. We find ourselves in disagreement with the trial court regarding damages on this cross-claim. Kaiser, in arguing its damage claim, emphasizes the use made of the road by both Mai and Kaiser. Kaiser does not claim the road has been damaged but rather argues Mai should pay for improvements to the road because Mai uses the road. Kaiser also expresses concern that Mai's saltwater trucks will in the *future* damage the road. Both arguments miss the point. Kaiser voluntarily improved the oil lease road without consulting Mai. We find no theory under which Kaiser can recover for that voluntary improvement. As to prospective damage to the road

surface, any duty owed by either party for maintenance of the surface of the land or damage to the land would be a duty owed to the landowner. See Annot., 53 A.L.R.3d 16. At this point any damage to the surface is purely speculative. Furthermore, the owners of the surface land who would suffer the loss are not parties to this action. See *Nelson v. Hedges,* 5 Kan. App. 2d 547, 619 P.2d 1174, *rev. denied* 229 Kan. 670 (1980).

The evidence clearly reveals Kaiser undertook voluntary improvement of the road on its lease without seeking Mai's consent or contribution and with knowledge that such improvement was not necessary to Mai's operation. There is no substantial evidence in the record to support the award of damages to Kaiser for improvement of the road bed either on the theory of unjust enrichment or under general principles of oil and gas law.

The judgment of the lower court awarding Kaiser $3,050.62 for road improvements and awarding Mai $1,416.00 for lost oil production is reversed; in all other matters the judgment of the lower court is affirmed.